**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GABE S. BARRENTINE,** | Civ. No. 2:12-3936 |
| **Plaintiff,** | (KM)(MAH) |
| **v.** | |
| **NEW JERSEY TRANSIT, et al.,** | **OPINION** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the motions of Defendants New Jersey Transit and George Piper (Docket No. 37), and Defendants Amalgamated Transit Union Local 822, Sherman Ariel, Calvin Osborn,[1] and Vernice Ross (Docket Nos. 40, 41) to dismiss the Second Amended Complaint. The Plaintiff, Gabe S. Barrentine, alleges incidents of unacceptable racist speech or conduct, but his complaint must nevertheless be dismissed. Barrentine failed to exhaust his Title VII employment discrimination claim against the labor union, and the individual defendants are not subject to suit under Title VII. In addition, he has failed to plead facts sufficient to support a Title VII claim against any of the defendants. Therefore, the motions to dismiss are **GRANTED** without prejudice to the filing of a properly supported motion to amend the complaint.

## I. BACKGROUND

Barrentine is a resident of Paterson, New Jersey. Second Amended Complaint (Docket No. 27). He brings the Second Amended Complaint ("SAC") against New Jersey Transit Bus Operations ("NJT"), George Piper, Amalgamated Transit Union Local 822 ("ATU"), Sherman Ariel, Calvin Osborn, and Vernice Ross. *Id.* The SAC alleges violations of Title VII of the Civil Rights Act of 1964

---

[1]     Osborn was incorrectly pleaded as "Calvin Armstrong" in earlier versions of the complaint, and is still listed under the incorrect name on the docket. The clerk will be directed to correct the reference.

("Title VII"), the New Jersey Conscientious Employee Protection Act ("CEPA"), the New Jersey Law Against Discrimination, and common law claims of negligence, breach of the duty of good faith, intentional and negligent infliction of emotional distress, and harassment. *Id.*

Because Barrentine's Title VII claims arise under the laws of the United States, the Court has original federal-question jurisdiction over this case pursuant to 28 U.S.C. § 1331. Diversity of citizenship is absent. *See* 28 U.S.C. § 1332. The remaining state law claims are therefore in the case only pursuant to the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367.

### A. Factual Background

On June 25, 1988, Barrentine started working for NJT as a bus operator out of the Market Street garage in Patterson, NJ. SAC ¶ 1. Defendant John Piper was a supervisor at Barrentine's garage. *Id.* ¶ 3. Defendant Ariel Sherman, Piper's supervisor and a close friend, was a member of ATU's executive board. *Id.* ¶¶ 13, 14. Defendants Calvin Osborn and Vernice Ross were also NJT employees, union representatives, and members of ATU's executive board. *Id.* ¶¶ 15-18.

Supervisors at NJT rotated every three years. *Id.* ¶ 3. Barrentine alleges that he experienced difficulties with Piper each time Piper was stationed at his garage. *Id.* Barrentine alleges that Piper used racial epithets towards him on several occasions from 2009 to 2011, referring to him as a "country ape" and "monkey boy." *Id.* These epithets were usually used in the presence of several other (unnamed) employees while Barrentine played pool in the garage during breaks. *Id.* Osborn, who also supervised Barrentine, allegedly used racial epithets as well, referring to Barrentine as a "Nigger, Country Ape, and Monkey Boy." *Id.* ¶ 17.

In November 2008 Barrentine saw Piper after work hours at a go-go bar. *Id.* ¶ 4. Piper told Barrentine that he would fire him if he told anyone that he saw Piper at the bar. *Id.* Afterwards, believing that Barrentine had told other co-workers about their encounter, Piper engaged in retaliatory behavior against him. *Id.* Piper ordered two undercover inspectors to conduct an investigation by riding Barrentine's bus for two weeks. *Id.* ¶ 5. At the end of the observation period, Barrentine was cited for not announcing stops and was suspended for three days without pay. *Id.* Barrentine concedes that there was a regulation requiring that bus drivers announce the stops, but alleges that the "custom and practice" was otherwise. *Id.* On or about May 22, 2009, Piper suspended Barrentine again, this time for not wearing his seatbelt. *Id.*

2

Barrentine also had difficulties with Defendant Ross. During Ross's employment at NJT, she became pregnant by the father of Barrentine's grand-nephew (in other words, the significant other of Barrentine's niece). *Id.* ¶ 19. Because that person continued to have a relationship with both Ross and Barrentine's niece, Ross was jealous, and her hostility carried over to Barrentine himself. *Id.*

On May 21, 2009, Barrentine was awarded a safe driving citation for driving his bus for 20 years without an accident. *Id.* ¶ 1. However, Barrentine had a record of several disciplinary infractions. On April 6, 1995, Barrentine tested positive for THC Metabolite during a random urine test and was suspended for 30 days. *Id.* ¶ 2. He was referred to the Employee Assistance Program (EAP), completed the program, and returned to full duty in May of 1995. *Id.* In the next 13 years, Barrentine was randomly drug tested five to six times without further incident. *Id.* ¶ 5. Then, on December 17, 2009, Barrentine tested positive for THC during a random test. *Id.* ¶ 6. He was placed in EAP and suspended for 30 days. *Id.* Thereafter, he was required to undergo weekly drug tests. His tests were negative until January 21, 2011, when he tested positive for cocaine metabolite and was suspended immediately. *Id.*

Barrentine disputes the accuracy of the drug test. *Id.* ¶ 8. In 2009, he had started taking prescription pain medication for a shoulder injury he received while in the military. *Id.* Barrentine told Defendants that he was taking OxyContin, Oxycodone, HCL, Nexium, Aciphex, cycopenzaprine, HCL, and Naproxen. *Id.* He denied ever using cocaine. *Id.*

Barrentine's ATU representative told him to obtain a letter from his physician attesting to his condition and prescribed medications. *Id.* ¶ 9. Barrentine alleges that his physician was "reluctant" to do so because "it was not within his specialty." *Id.* Still, Barrentine urged the union representative to obtain an expert on his behalf, but ATU did not do so. *Id.*

On Barrentine's behalf, ATU filed a grievance against NJT. *Id.* ¶ 10. ATU represented Barrentine during all four steps of the grievance procedure, but the grievance was denied at each step. *Id.* On July 8, 2011, ATU notified Barrentine that he could appear before the executive board to discuss his right to an arbitration. *Id.* Barrentine appeared before the board and requested that the matter be arbitrated, and that ATU retain a toxicologist to challenge the lab tests. *Id.* ¶ 11. He alleges that another reason he requested arbitration was that he believed that Piper discriminated against him because of the go-go bar

3

incident. *Id.* ¶ 11. The board, however, decided not to proceed to arbitration and informed Barrentine of that decision on July 18, 2011. *Id.* ¶ 12.

### B. Procedural History

Barrentine filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued a right to sue letter on April 30, 2012. SAC ¶ 27. Barrentine filed his district court complaint *pro se* on June 27, 2012. (Docket No. 1). At the time of filing, Barrentine applied for permission to proceed *in forma pauperis* and requested pro bono counsel. (Docket Nos. 1, 2). Hon. Esther Salas, the District Judge initially assigned to the case, denied the request for pro bono counsel but granted the application to proceed *in forma pauperis*. Barrentine filed an amended complaint *pro se* on July 13, 2012. (Docket No. 8).

The case was re-assigned to me on August 1, 2012. Barrentine retained counsel who entered an appearance on his behalf on January 9, 2013. (Docket No. 17). After obtaining an extension of time, ATU filed an answer to the amended complaint on January 14, 2012. (Docket Nos. 14, 18). On April 26, 2013, NJT filed a motion to dismiss the complaint for failure to effect service pursuant to Fed. R. Civ. P. 4(m). (Docket No. 25). Three days later, on April 29, 2013, Barrentine filed another amended complaint without leave of court. (Docket No. 26). Then, on May 1, 2013, he filed *another* amended complaint. (Docket No. 27). Although this was actually the fourth complaint that Barrentine submitted, he and the Defendants refer to it as the "Second Amended Complaint" ("SAC"). To avoid confusion, I do the same, and, like the parties, I will treat this (Docket No. 27) as the currently operative complaint. ATU answered the SAC on June 5, 2013. (Docket No. 33).

The motion to dismiss pursuant to Rule 4(m) was referred to Magistrate Judge Michael A. Hammer for a report and recommendation. Judge Hammer recommended denying the motion (Docket No. 34), and I adopted his report and recommendation on August 28, 2013 (Docket No. 35).

On September 4, 2013, NJT and Piper moved to dismiss the SAC pursuant to Rule 12(b)(6). (Docket No. 37). On October 16, 2013, Defendants Ariel, Osborn, and Ross filed an answer with affirmative defenses. (Docket No. 39). Simultaneously, those individual Defendants and ATU (together, "ATU

4

Defendants"), moved to dismiss the complaint pursuant to Fed. R. 12(b)(1) and 12(b)(6).[2] (Docket Nos. 39, 40, 41).

## II. ANALYSIS

Barrentine's SAC contains 11 counts: employment discrimination under Title VII against NJT, Piper, Ariel, and Osborn (Count 1); hostile work environment under the New Jersey CEPA statute against NJT, Piper, Ariel, Armstrong and Ross (Counts 2 and 3); employment discrimination under Title VII against ATU (Count 4); negligence against ATU and Ariel (Count 5); violation of the duty of good faith against ATU and Ariel (Count 6); discrimination and retaliation under the New Jersey LAD against all Defendants (Counts 7 and 8); negligent infliction of emotional distress against all Defendants (Count 9); intentional infliction of emotional distress against all Defendants (Count 10); and harassment against all Defendants (Count 11).

NJT and Piper move to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6).

ATU and Defendants Ariel, Osborn, and Ross also move to dismiss the SAC under Rule 12(b)(6), and move to dismiss the state law counts under Rule 12(b)(1). The ATU Defendants answered the complaint before moving to dismiss it.[3] *See* Docket Nos. 33, 39. Therefore, the motion to dismiss must be construed as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See* Fed. R. Civ. P. 12(h)(2); *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

All Defendants challenge the SAC based on Barrentine's failure to exhaust his administrative remedies. Although raised under Rule 12(b)(6), this contention goes to the jurisdiction of the Court because federal courts lack jurisdiction to hear a Title VII claim unless the plaintiff has filed a charge with the EEOC. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926 (3d Cir. 1997). Failure to exhaust is therefore properly considered under Fed. R. Civ. P. 12(b)(1).

---

[2]     ATU's motion to dismiss was originally filed without a notice of motion and proposed order (Docket No. 40), and was re-filed on October 16, 2013 (Docket No. 41).

[3]     In the case of Ariel, Osborn, and Ross, the answer was filed immediately before the motion to dismiss. *See* Docket Nos. 39, 40.

### A. Legal Standards

#### 1. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege a sufficient basis for subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual challenge, however, attacks subject-matter jurisdiction by challenging the truth (or completeness) of the jurisdictional allegations set forth in the complaint. *Mortensen*, 549 F.2d at 891. Thus a factual jurisdictional proceeding may not occur until the plaintiff's allegations have been controverted. *Id.* at 891 n. 17. In a factual challenge, the Court may consider evidence outside the pleadings. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d. Cir. 2007) (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *Mortenson*, 549 F.2d at 891.

As explained below, NJT's motion controverts the facts alleged in the SAC with extrinsic evidence. It is therefore a factual attack on the Court's subject matter jurisdiction, which does not confine the Court to the allegations of the complaint or require that they be presumed true.

#### 2. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Defendants also argue that Barrentine has failed to state a valid claim for relief. The defense of failure to state a claim upon which relief can be granted is most commonly asserted by motion under Federal Rule of Civil Procedure 12(b)(6). It may also be asserted in a motion for judgment on the pleadings pursuant to Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2). The same standard applies under either Rule 12(b)(6) or Rule 12(c). *Turbe*, 938 F.2d at 428.

To state a valid claim for relief, the Complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and

6

plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed R. Civ. P. 8(a).

The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding such a motion, a court must take the allegations of the complaint as true and draw reasonable inferences in favor of the Plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

The Third Circuit has usefully distilled the Rule 12(b)(6) analysis to three steps:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal,* 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).

## B. Barrentine's Federal Law Claims under Title VII

Because the Court's jurisdiction over the SAC depends on Barrentine's federal Title VII claims, I begin my analysis there. Barrentine alleges that NJT, through its employees Piper, Ariel, and Osborn, engaged in discriminatory conduct based on his race and national origin which resulted in his termination of employment. SAC ¶¶ 23-25 (Count 1). Barrentine also alleges

that ATU, through Ariel, discriminated against him and that, as a result, his grievance was not properly submitted for arbitration and his employment was terminated. *Id.* ¶¶ 46-48 (Count 4).

As to each set of defendants, Barrentine's complaint must (1) show exhaustion of his remedies before the Equal Employment Opportunity Commission, and (2) state a valid claim for relief.

### 1. Failure to Exhaust Claims Before EEOC

NJT and Piper argue that Barrentine cannot assert a Title VII claim against Piper because the EEOC Charge of Discrimination he filed did not name Piper.[4] NJT Br. (Docket No. 37-1) at 6. The ATU Defendants assert the same argument on their own behalf because Barrentine's EEOC charge also did not name ATU, Ariel, Osborn, or Ross. ATU Br. (Docket No. 40) at 6.

Before filing a civil Title VII suit, the plaintiff must wait for the EEOC to investigate the charge and issue a right-to-sue letter. *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) (not precedential) (citing *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001)). The ensuing suit is limited to claims that are within the scope of the initial administrative charge. *Id.*; *Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996). In reviewing the complaint, district courts are instructed to take jurisdiction where "a reasonable investigation of the charge as filed would have encompassed" the claim in question. *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978); *see also Barzanty*, 361 F. App'x at 413.

Barrentine alleges that he filed a charge with the EEOC and received a right to sue letter on April 30, 2012.[5] SAC ¶ 27. Defendants do not dispute

---

[4]   NJT and Piper also argue that Barrentine's Title VII claim must be limited to a claim of race-based discrimination because the EEOC Charge did not assert discrimination based on national origin. NJT Br. at 4. In the EEOC charge, Barrentine alleged that he was discriminated against on the basis of his race. *Id.* Barrentine does not dispute this, but states that his national origin claim is also based on his being African-American, and that there is no practical difference between the two claims. Opp. to NJT (Docket No. 42) at 4. I agree that there is no practical difference between the claims; Barrentine's opposition confirms that he is pursuing only a claim of race-based discrimination—which is clearly set forth in the EEOC charge.

[5]   Although the SAC does not contain any details about the charge or the subsequent EEOC investigation, Barrentine has sufficiently alleged exhaustion. *Hildebrand v. Allegheny Cnty.*, 2014 WL 2898527, at *11, --F.3d-- (3d Cir. June 27, 2014) (holding that pleading of conditions precedent is not governed by the

that; instead they argue that his SAC exceeds the scope of the charge.[6] In the charge, Barrentine alleged that NJT discriminated against him during the time he was employed as a bus driver by subjecting him to "disparate terms and conditions of employment" and terminating him on the basis of his race. NJT Ex. A (Docket No. 37-1).

### a. NJT

Barrentine alleges that NJT, through its employees Piper, Ariel, and Osborn, engaged in discriminatory conduct towards him that resulted in his termination. SAC ¶ 25. Barrentine filed his EEOC Charge against NJT, alleging that he was subjected to disparate treatment and that he was terminated as a result of his race. *See* NJT Ex. A. Therefore, Barrentine properly exhausted his Title VII claim as to NJT.

### b. ATU

Barrentine did not include ATU in his EEOC charge against NJT. Accordingly, the survival of the claim against ATU depends on whether it is within the scope of his EEOC Charge against NJT and the investigation arising therefrom. *Antol*, 82 F.3d at 1295 (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (per curiam)). Barrentine's allegations against ATU, a labor union, are distinct from his claim against NJT, his employer. He alleges that ATU discriminated against him by not properly presenting his grievance for arbitration. SAC ¶ 48. That is separate conduct by ATU that occurred after NJT terminated him.

ATU's decision as to whether to pursue Barrentine's grievance is not within the scope of his EEOC Charge. A reasonable investigation of Barrentine's charge would have encompassed his complaints of workplace discrimination, but would not have extended to ATU's representation of Barrentine or its decision regarding the arbitration of his grievance. Barrentine attempts to bridge the gap in his opposition brief, arguing that Ross and Ariel were affiliated with both the ATU and NJT (presumably as union representatives), and that they were therefore involved in both the decision to terminate and the decision not to arbitrate. Pl. ATU Opp. (Docket No. 43) at 5.

---

*Iqbal/Twombly* standard; plaintiff may allege generally that conditions precedent occurred or have been performed); Fed. R. Civ. P. 9(c).

[6]      NJT attached the charge to its motion to dismiss as Exhibit A. *See* NJT Motion, Ex. A (Docket No. 37-1).

This theory is not alleged in the SAC; in fact the SAC does not contain any facts directly alleging that Ross and Ariel were involved in *either* decision.

Setting that pleading deficiency aside, the mere fact that two of the individual defendants were associated with both the employer and the union is not enough to bring Barrentine's claim against ATU within the scope of his claim against NJT. In the absence of some allegation linking the two, there is no logical reason why any reasonable investigation of NJT's conduct leading up to Barrentine's termination would encompass ATU's grievance procedures following his termination. *Cf. Barzanty*, 361 F. App'x at 414 (finding failure to exhaust as to hostile work environment claim where claims involved separate incidents); *Valdes v. New Jersey*, Civ. No. 05–3510 (GEB), 2005 WL 3447618, at *4 (D.N.J. Dec. 15, 2005) (dismissing a hostile work environment claim because it was outside the "scope of a reasonable investigation" of the retaliation claim in the EEOC charge).

Because the ATU claim falls outside the scope of the EEOC Charge, this Court does not have jurisdiction over Barrentine's Title VII claim against ATU. Allowing Barrentine to pursue his claim against ATU without filing an EEOC charge would defeat the purpose of the exhaustion requirement, which is to afford the EEOC the opportunity to settle disputes and avoid unnecessary action in court. *Antol*, 82 F.3d at 1296. Therefore, I must dismiss the Title VII claim against ATU.

### c. Individual Defendants

Barrentine did not file an EEOC Charge of discrimination against any of the individual defendants, but that does not dispose of the exhaustion issue as to them. *See* NJT Ex. A. As in the case of his claim against ATU, whether Barrentine exhausted his claim against the individual defendants hinges on the scope of the charge and subsequent investigation. Although Barrentine named only NJT in the charge, his allegations of workplace discrimination concern the actions of the employees individually named as defendants (Piper, Osborn, Ariel, and Ross). A reasonable investigation of the charge would have encompassed those actions—including the employees' use of derogatory epithets and unfair discipline—that were the basis for his claim against his employer. Therefore, Barrentine's EEOC Charge adequately exhausted his Title

VII workplace discrimination claim against the individual defendants.[7] *Barzanty*, 361 F. App'x at 413.

## 2. Failure to State a Claim

Putting aside Barrentine's failure to exhaust as to ATU, the factual allegations in the SAC are not sufficient to state a right to relief under Title VII that is "plausible on its face" as to any of the defendants. *Twombly*, 550 U.S. at 570.

To state a prima facie case of discrimination under Title VII, a plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 348 n. 1, 352, 356 (3d Cir.1999)).

### a. NJT

Assuming *arguendo* that the SAC sufficiently supports the first three elements of a Title VII claim against NJT, Barrentine's allegations fall short as to the fourth element of the claim: discriminatory action and continued attempts to fill the position with a similarly qualified individual.

Barrentine alleges various incidents of race-based harassment by his fellow employees Piper and Osborn, SAC ¶¶ 3, 6, 17, but he does not connect that conduct to his termination. In fact, Barrentine does not allege with specificity *any* facts regarding his termination. Barrentine alleges that after a positive drug test in 1995, he tested positive again during a "random urine test" on December 17, 2009. *Id.* ¶ 6. He was suspended after both incidents and after the second positive test, he was tested weekly. He tested positive for a

---

[7]     This finding does not encompass the allegations against Ariel related to ATU's representation of Barrentine during the grievance process. *See* discussion of claim against ATU at II.B.1.b, *supra*.

Furthermore, my finding that Barrentine exhausted his claim against the individuals does not imply that the claim is otherwise viable. Had he brought such an administrative claim, the EEOC would probably have denied or dismissed it. *See* discussion at II.B.2.c, *infra* (explaining that Title VII claim may be brought only against employer, not against individual co-employees).

third time on January 21, 2011. *Id.* ¶ 7. (Barrentine does not allege that the tests were administered in a discriminatory manner.) He alleges that he was suspended again after the last test, and then describes his grievance process with ATU and its ultimate decision not to pursue arbitration of his grievance. *Id.* ¶¶ 7-12. The Court is left to infer that he was terminated after, perhaps as a result of, the suspension. No other allegations are offered as to the circumstances of the termination, including the identity of the person who made the decision to terminate Barrentine and the proffered reason for his dismissal.

As required, I take the SAC's allegations as true and view them in the light most favorable to the plaintiff, but they are not sufficient to raise Barrentine's right to relief above a speculative level. *Umland,* 542 F.3d at 64. To state a valid claim for relief under Title VII, Barrentine must allege facts showing that his termination raises an inference of discriminatory animus. It is not enough to allege discriminatory treatment and separately allege that disciplinary action was taken after an unrelated incident. Barrentine's Title VII claim is therefore dismissed as to NJT.

### b. ATU

While I premise my dismissal of Barrentine's Title VII claim against ATU on failure to exhaust, for plaintiff's guidance I state that I would also likely dismiss it, in its current form, for failure to state a claim. In an appropriate case, a labor union such as ATU may be a proper defendant in a Title VII claim. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 669, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (holding that a union "discriminates" within the meaning of Title VII when it "pursue[s] a policy of rejecting disparate-treatment grievances presented by blacks solely because the claims assert racial bias and would be very troublesome to process"); 42 U.S.C. § 2000e-2.

Under Section 2000e-2, a labor organization may be liable for engaging in any of the following practices:

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin; (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an

12

applicant for employment, because of such individual's race, color, religion, sex, or national origin; or (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

Barrentine's claim that ATU discriminated against him by not properly presenting his grievance for arbitration might fall under subsection (1), which encompasses claims that the union itself "otherwise discriminate[d]" against the plaintiff. *See Goodman*, 482 U.S. at 669; *Hubbell v. World Kitchen, LLC*, 717 F. Supp.2d 494, 502 (W.D. Penn. 2010).[8]

However, Barrentine has not alleged facts tending to show that the union had a discriminatory motive when it declined to prosecute his grievance. He alleges that ATU engaged in discriminatory conduct through Sherman Ariel, his union representative. SAC ¶¶ 45-48. Ariel allegedly was indirectly responsible for the union's decision because he did not convince ATU to have a toxicologist examine Barrentine's urine test results after Barrentine failed to get a physician's note from his doctor confirming his medications. *Id.* Barrentine also alleges that Ariel was a close friend of Defendant Piper and had used racial epithets towards the defendant. *Id.* ¶ 46. Barrentine does not allege that Ariel played any part in the decision to deny arbitration, and he also does not allege any facts showing that ATU's actions were otherwise discriminatory. The SAC thus contains no link between the alleged discriminatory conduct and ATU's decision not to pursue the grievance. Therefore, Barrentine fails to state a claim on which relief could be granted as to his Title VII claim against ATU. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 95-96 (3d Cir. 1999) (affirming dismissal where record did not indicate that the union *itself* engaged in discriminatory conduct). Any amended pleading should address these deficiencies.

---

[8]     Although *Goodman* addressed a discriminatory policy espoused by the union, at least two district courts have found that a single act of discrimination in the form of a "deliberate choice by a union not to process a grievance" may give rise to a claim against the union under Title VII. *Hubbell*, 717 F. Supp.2d at 501 (citing *King v. Laborers Int'l Union of N. Am., Union Local No. 818*, 443 F.2d 273, 278 (6th Cir. 1971)); *Young-Smith v. Bayer Health Care, LLC*, 788 F.Supp.2d 792, 805 (N.D. Ind. 2011) (citing *Hubbell*). I find the reasoning of these cases persuasive. Title VII does not only protect against policies of discrimination; it also prohibits discrete acts of discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").

### c. Individual Defendants

Barrentine's Title VII claim against the individual defendants fails as a matter of law because they are not "employers" within the meaning of the statute. Title VII imposes liability on an "employer," defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996) (quoting 42 U.S.C. § 2000(e)-2(a)). It might be argued that such an "agent" could be the plaintiff's co-employee. But the Third Circuit, like a clear majority of courts, has held that there is no individual liability under Title VII. *Id.* at 1077-78. Therefore Barrentine's Title VII claim fails as a matter of law as to Defendants Piper, Ariel, Osborn and Ross.

## C. Remaining State Law Claims

Because Barrentine's federal claims under Title VII are dismissed, the Court no longer has original federal-question jurisdiction of the case pursuant to 28 U.S.C. § 1331. When a court has dismissed all claims over which it had original jurisdiction, the supplemental jurisdiction statute grants the court discretion to dismiss the remaining state-law claims. 28 U.S.C. § 1367(c)(3). Because no substantial federal question is presented, and there has been no substantial investment of federal-court resources in adjudicating the state claims, dismissal seems the better course. I will therefore exercise my discretion to dismiss the remaining state law claims in Counts 2, 3, 5, 6, 7, 8, 9, 10, and 11 for lack of jurisdiction.

## III.  Conclusion

For the foregoing reasons, the Second Amended Complaint is dismissed. Because this is the Court's first review of the substance of the allegations, that dismissal is without prejudice to the filing of a properly supported motion to amend the complaint. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). If such a motion is not filed within 30 days, this dismissal will become final. An appropriate Order accompanies this Opinion.

**Kevin McNulty**
**United States District Judge**

Dated: September 2, 2014